IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
NO. 2:10-CV-60-BO

| | |
|---|---|
| PAULA J. ASHLEY, )<br>        Plaintiff, )<br>)<br>v. )<br>)<br>THE HONORABLE THOMAS J. )<br>VILSACK, SECRETARY, UNITED )<br>STATES DEPARTMENT OF )<br>AGRICULTURE, )<br>        Defendant. ) | **O R D E R** |

This matter is before the Court on Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [DE 7]. Plaintiff filed a Response on June 6, 2011 [DE 14], and Defendant replied on June 20, 2011 [DE 25]. Because the Court has considered affidavits from both parties, this Motion is properly considered as a motion for summary judgment and is GRANTED.

BACKGROUND

Paula Ashley began employment with the National Resources Conservation Service ("NRCS") in November 1984 as a Soil Conservation Technician in the NRCS Tarboro Field Office ("FO"). In August 1996, she became a Soil Conservationist, later transferring to the Bayboro FO and then to the Windsor FO.

In July 2007, the NRCS State Office for North Carolina reviewed the Windsor FO as part of its program appraisal ("PA") of the Area Office for Area 3 (East). Ms. Ashley was the District Conservationist, and only employee of the Windsor office at that time. Problems were uncovered

during the review and Ms. Ashley was given time to correct those problems.

In June 2008, Ms. Ashley's occupational series was changed from Soil Conservationist to Program Analyst, consistent with NRCS's nationwide order to reclassify those employees who did not have four-year college degrees. Ms. Ashley retained the same grade, step, salary, and duty station, but her duties changed.

In August 2008, nine technical specialists arrived in Windsor to conduct a PA. The specialists concluded that the office was in such disarray that a close-out meeting was scheduled for October. The Assistant State Conservationist ("ASTC") for Windsor's Area Office, Renee Melvin, held a meeting on September 17, 2008 with Ms. Ashley and some of the review team members to answer questions about the Windsor files. Ms. Ashley claims that ASTC Melvin used profanity and "ridiculed and humiliated her" in front of other staff members.

In November 2008, a Functional Appraisal ("FA") of the Windsor FO was conducted. A final report was sent to State Conservationist Mary Combs. After reviewing the FA, STC Combs detailed Ms. Ashley to the Edenton FO, effective immediately, on March 16, 2009. In the meeting where this written notice was delivered, Ms. Ashley asked if her detail was connected to the change in her occupation series and if there was a list of employees for termination. She was told "no" in response to both questions. Ms. Ashley signed the detail letter the next day. The following day, STC Combs sent Ms. Ashley a letter, notifying her that she was not to visit or contact the Windsor FO and that all federal files would be in ASTC Melvin's custody.

On November 11, 2010, Ms. Ashley filed the instant lawsuit, alleging four incidents of discrimination that she claims created a hostile work environment: (1) her supervisor's use of profanity toward her on two occasions; (2) her supervisor's inquiry to her and to a colleague as to whether she had medical issues; (3) her indefinite detail to the Edenton FO and restrictions on her

ability to visit or make contact with the Windsor FO; and (4) management's denial of access to her files to respond to FA findings.

## DISCUSSION

### I. Subject-Matter Jurisdiction

Secretary Vilsack seeks to dismiss Ms. Ashley's claims related to her change in occupational series for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12 (b)(1), alleging Ms. Ashley's failure to exhaust administrative remedies. Under Equal Opportunity Commission regulations, an "aggrieved employee" must consult an agency EEO counselor within 45 days of any "matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105 (a)(1). In the context of hostile work environment claims, the United States Supreme Court has explained that it is appropriate to consider any timely incident, even where there is a significant time gap between that incident and prior allegations, "so long as each act is part of the whole." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002). Therefore, the entire time period of the hostile work environment may be considered by a court, provided that an act contributing to the claim occurs within the filing period. *Wilkinson v. Rumsfeld*, 100 F. App'x 155, 158 (4th Cir. 2004).

However, this "continuing violation" theory does not permit a plaintiff to survive a motion to dismiss on discrete discriminatory acts that are otherwise time-barred. Ms. Ashley first sought EEO counseling, at the earliest, on March 17, 2009. Her occupational series was changed in June of 2008. Secretary Vilsack has presented uncontested evidence that Ms. Ashley was reassigned to a different occupational series as a result of a national policy that encompassed all employees

similarly situated to Ms. Ashley. Although Ms. Ashley claims that she was treated differently than a male counterpart, Mr. Richard Everhart, she does not allege that her change in occupational series was inconsistent with her educational qualifications. Mr. Everhart's reclassification seems to have been an inadvertent error, and not a valid comparator for alleging sex-based discrimination against Ms. Ashley.

## II. Hostile Work Environment

Summary judgment is appropriate if the pleadings and affidavits show that "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, the Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in her favor, but it will not make credibility determinations, nor will it weigh the evidence. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

Title VII protects employees from personnel actions that discriminate on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Title VII specifically creates a cause of action for employees forced to work in a hostile workplace. *Meritor Savs. Bank v. Vinson*, 477 U.S. 57, 66 (1986). To state a prima facie claim establishing a hostile work environment, an employee must allege that (1) she experienced unwelcome harassment; (2) the harassment was because of her sex; (3) the harassment was sufficiently severe or pervasive to alter conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Bass v. E.I. Dupont*, 324 F.3d 761, 765 (4th Cir. 2003). In determining whether an actionable claim exists, all circumstances are considered, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

An employee is harassed or discriminated against "because of" her sex if her sex is a "motivating factor" of the conduct. 42 U.S.C. § 2000e-2(m). Even assuming that all of the facts pleaded in Ms. Ashley's complaint occurred, she has not alleged any connection between her sex and the harassment. Ms. Ashley alleges four incidents of discrimination that she claims created a hostile work environment: (1) her supervisor's use of profanity toward her on two occasions; (2) her supervisor's inquiry to her and to a colleague as to whether she had medical issues; (3) her indefinite detail to the Edenton FO and restrictions on her ability to visit or make contact with the Windsor FO; and (4) management's denial of access to her files to respond to FA findings. These claims cannot survive summary judgment because there is no indication that sex was a factor, let alone a motivating factor, for any of the above incidents.

For example, in her meeting with ASTC Melvin, Ms. Ashley claims that Ms. Melvin "used profanity, yelled, slammed papers in front of a group of people, stated that she was going to order a functional review, and stated that she had been involved with the Office of Inspector General and that I [Ms. Ashley] didn't want to go there. She stated that OIG would eat me alive, slammed papers, screamed in front of other employees, and threw her arm and hand toward me" [DE 15 at 3]. According to the Thompson Affidavit, Ms. Melvin said to Ms. Ashley, "Damn it Paula, you are a professional, you should know these things" [DE 17 at 1]. Even if this behavior could be viewed as erratic or unprofessional, the content of the profanity and the nature of the threatened investigation have no connection to Ms. Ashley's sex, and cannot provide the basis for a Title VII action. As the Fourth Circuit held in *Hartsell v. Duplex Prods., Inc.*, "an insulting or demeaning remark does not create a federal cause of action for sexual harassment merely because

the 'victim' of the remark happens to belong to a class protected by Title VII." 123 F.3d 766, 772 (4th Cir. 1997). On the contrary, a plaintiff must demonstrate that her sex was a motivating factor in the conduct.

Further, Ms. Ashley cannot rest on her own unsupported conclusion that "I believe my age and sex played a role because in September 2007, the State office conducted a field office review in Bertie County, NC...there was a list of people to be removed and my name was on that list" [DE 15-1 at 3]. Similarly, in *Causey v. Balog*, the plaintiff presented only "conclusory statements, without specific evidentiary support." 162 F.3d 795, 802 (4th Cir. 1998). The Fourth Circuit held that, because the plaintiff "provided no evidence that the alleged acts of mistreatment were based on his race or age," summary judgment was appropriate. *Id.* So too here.

Ms. Ashley also fails to allege a sex-based basis for Ms. Melvin's inquiry into Ms. Ashley's "medical issues" and Ms. Ashley's detail to the Edenton, North Carolina FO. She provides no reason why her sex would be implicated in the request for medical information. She does not contest that her detail to Edenton was a result of her functional appraisal outcome, or that her access to documents was restricted due to the sensitive nature of the information contained therein. Further, the fact that the State Office considered disciplinary action against her, which it ultimately decided not to pursue, is not prima facie evidence of sex discrimination, absent any allegation of Ms. Ashley's sex being a motivating factor in the decisionmaking. Without any basis connecting the conduct at issue to Ms. Ashley's sex, her claim under Title VII cannot continue.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, or in the Alternative, Motion

for Summary Judgment [DE 7] is GRANTED.

SO ORDERED, this the /2 day of September, 2011.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE